```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
PREMALAL RANASINGHE,                                                    :
                                                                        :
                                Plaintiff,                              :    16-CV-2170 (JMF)
                                                                        :
            -v-                                                         :    OPINION AND ORDER
                                                                        :
PATRICK M. KENNELL, et al.,                                             :
                                                                        :
                                Defendants.                             :
                                                                        :
------------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 01/25/2017

JESSE M. FURMAN, United States District Judge:

It is a "fundamental precept" of the American legal system "that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies." *Montana v. United States*, 440 U.S. 147, 153 (1979) (internal quotation marks omitted). This precept, embodied in the doctrines of *res judicata* and collateral estoppel, is "central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions." *Id.* Indeed, "[t]o preclude parties from contesting matters that they have had a full and fair opportunity to litigate" not only "protects their adversaries from the expense and vexation attending multiple lawsuits," but also "conserves judicial resources[] and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Id.* at 153-54.

These principles apply with full force to this case, brought by Premalal Ranasinghe, proceeding *pro se*, against Great West Casualty Company ("Great West") and various attorneys and law firms that represented Great West and its interests in previous lawsuits (together,

"Defendants").[1]  Indeed, Ranasinghe asserts in this case claims that he has repeatedly pressed in other fora and continues to press in a pending appeal before the United States Court of Appeals for the Ninth Circuit.  On that basis and others, Defendants move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss all of Ranasinghe's claims.  (Docket Nos. 53, 57).  Several Defendants also move for sanctions — namely, for a pre-filing injunction barring Ranasinghe from filing any further lawsuits relating to the matters pressed here and for attorney's fees.  (Docket No. 64).  For the reasons stated below, Defendants' motions to dismiss are GRANTED, and their motion for sanctions is GRANTED in part and DENIED in part.

## BACKGROUND

The following facts are taken from the Third Amended Complaint and documents of which the Court can take judicial notice.  *See, e.g.*, *Karmely v. Wertheimer*, 737 F.3d 197, 199 (2d Cir. 2013); *Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 337 F.3d 201, 205 n.4 (2d Cir. 2003) (noting that a court may take judicial notice of official court records in a related proceeding and citing cases).  Where taken from the Third Amended Complaint, the facts are assumed to be true.  *See Karmely*, 737 F.3d at 199.

Defendants' legal saga with Ranasinghe began with the death of Sarath Sapukotana, a Sri Lankan native working as a truck driver in the United States.  (Docket No. 48 ("Third Am. Compl.") ¶¶ 21-39).  In January 2008, Mr. Sapukotana died after being struck by another truck in

---

[1] Ranasinghe identifies himself as an attorney licensed in Sri Lanka and "qualified to sit for the Bar Examination in the State of New York."  (Docket No. 48 ("Third Am. Compl.") ¶ 26). In light of that, one could argue that he is not entitled to the "special solicitude typically afforded *pro se* parties."  *Simpson v. Wells Fargo Bank*, No. 15-CV-1487 (JMF), 2016 WL 393544, at *2 (S.D.N.Y. Feb. 1, 2016) (citing cases for the proposition that "a lawyer representing herself is ordinarily entitled to no such solicitude at all from the court" (internal quotation marks omitted)). The Court need not decide whether that is the case, however, as the outcome here would be the same whether Ranasinghe was afforded special solicitude or not.

Arizona. (*Id*. ¶ 21). Later that year, Martha Sapukotana, purporting to be Mr. Sapukotana's wife, brought a wrongful death action in the United States District Court for the District of Arizona against the driver who struck Mr. Sapukotana and the driver's company — both of which were insured by Defendant Great West. (Docket No. 54 ("Kennell Decl."), Ex. E at 2-3 ("Wrongful Death Case Docket"); *see also* Third Am. Compl. ¶¶ 23-39). Defendant Joseph Popolizio and his law firm, Defendant Jones, Skelton & Hochuli P.L.C. ("Jones Skelton") represented the defendants in that case. (Third Am. Compl. ¶ 23-24).

In late November 2009, a few weeks before the close of discovery in the wrongful death suit, Palihawadanage Ramya Chandralatha Fernando, a Sri Lankan woman, moved to intervene, claiming she was Mr. Sapukotana's actual surviving spouse. (*See* Wrongful Death Case Docket at 8; Kennell Decl., Ex. F at 1). Ranasinghe — purporting to be acting as Ms. Fernando's "attorney-in-fact" by virtue of a "Power of Attorney" — provided Defendant Popolizio with documents allegedly showing that Ms. Sapukotana's marriage to Mr. Sapukotana was a sham. (Third Am. Compl. ¶¶ 25, 29, 197-99; *see also* Kennell Decl., Ex. K ("*Ranasinghe I* Summ. J. Order") at 3-4). The Arizona District Court, however, denied Ms. Fernando's motion to intervene. (*Ranasinghe I* Summ. J. Order at 2-3). On appeal, the United States Court of Appeals for the Ninth Circuit affirmed, concluding that "[Ms.] Fernando is not [Mr.] Sapukotana's surviving wife." (*See id.* at 4). In June 2012, Ms. Sapukotana's wrongful death suit settled. (Wrongful Death Case Docket at 14; Third Am. Compl. ¶ 39).

In July 2013, Ranasinghe, represented by counsel, filed a lawsuit ("*Ranasinghe I*") in the United States District Court for the Eastern District of New York ("E.D.N.Y.") against Popolizio, Jones Skelton, and another Jones Skelton attorney, Phillip H. Sanfield (together, the "Jones Skelton Defendants"), as well as Great West. (Kennell Decl., Ex. G ("*Ranasinghe I*

3

<br>

Dismissal Order") at 1; Third Am. Compl. ¶ 40).  Ranasinghe asserted breach-of-contract claims against Great West and malpractice claims against the Jones Skelton Defendants.  (*Ranasinghe I* Dismissal Order at 1).  Specifically, Ranasinghe alleged that Great West had breached an agreement to compensate Ms. Fernando for Mr. Sapukotana's death and that the Jones Skelton Defendants had orally agreed to compensate him for providing documents showing that Ms. Sapukotana was not Mr. Sapukotana's surviving spouse.  (*Id.* at 2-3; Third Am. Compl. ¶¶ 29-30).  The E.D.N.Y. Court dismissed Ranasinghe's claims against the Jones Skelton Defendants for lack of personal jurisdiction.  (*Ranasinghe I* Dismissal Order at 4-5; Third Am. Compl. ¶¶ 43-44).  When Ranasinghe refiled his claims against the Jones Skelton Defendants in the District of Arizona, the E.D.N.Y. Court transferred the remaining breach-of-contract claim against Great West to Arizona.  (Kennell Decl., Ex. H at 1; Kennell Decl., Ex. J ("*Ranasinghe I* Ariz. Case Docket") at 9-10; Third Am. Compl. ¶¶ 45-46).

In January 2015, the Arizona District Court granted summary judgment to Great West, holding that "Ranasinghe's testimony and evidence do not present a coherent picture of the terms of the parties' alleged contract" and that "a contract cannot be enforced."  (*Ranasinghe II* Summ. J. Order at 13; Third Am. Compl. ¶ 139).  The next month, the Court dismissed Ranasinghe's claims against the Jones Skelton Defendants on the ground that Ranasinghe "fail[ed] to state a claim for relief."  (Docket No. 59 ("Bauer Aff."), Ex. F at 1, 8; *see also* Bauer Aff., Ex. G at 4; Third Am. Compl. ¶ 221).  Thereafter, applying Arizona state law, the Court ordered Ranasinghe to pay Great West $234,498.70 in attorneys' fees.  (*Ranasinghe I* Ariz. Case DocketJ at 16; Ex. M at 6; Third Am. Compl. ¶ 88).  Ranasinghe then filed three motions — the first two through counsel and the third, after withdrawal of counsel, on his own behalf — seeking reconsideration of the Arizona District Court's orders and judgment.  (Bauer Aff., Ex. S at 2; Third Am. Compl.

¶¶ 79-80).  In the motions (and other submissions), Ranasinghe repeatedly argued that Great West and its counsel had filed a "false and fabricated affidavit" from Popolizio.  (*See, e.g.,* Kennell Decl., Ex. O at 4, 6; Ex. P at ¶ 19; Ex. R at 5-9).  Notably, in its order denying the first motion, the Arizona District Court held that Ranasinghe had "not presented any understandable basis for revisiting the summary judgment order."  (Kennell Decl., Ex. Q at 2).  And in its order denying the second motion, the Court went further, observing that Ranasinghe had presented "arguments previously made and rejected as well as new arguments that have no legal or factual basis."  (Kennell Decl., Ex. T at 1).  The Court continued, bluntly warning that Ranasinghe's "filings cannot continue" and that, if he did file "additional motions similar to his previous motions, the Court will pursue sanctions against both [Ranasinghe] and his counsel."  (*Id.*).

Ranasinghe, proceeding *pro se*, appealed the *Ranasinghe I* judgment and various orders to the Ninth Circuit, arguing, among other things, that the Arizona Court had erred in relying on the allegedly fabricated affidavit.  (Kennell Decl., Ex. Y at 5).  That appeal remains pending.  *See Ranasinghe v. Great West Cas. Co.*, No. 15-15247 (9th Cir. filed July 18, 2013).  Since the appeal was filed, Great West has tried in vain to collect the $234,498.70 from Ranasinghe.  (*See, e.g.*, Docket No. 55 ("Great West Mem.") at 12-13).  On multiple occasions, Great West was forced to seek judicial relief, prompting at least two warnings to Ranasinghe that failure to comply with his post-judgment discovery obligations might result in contempt.  (*Id.* at 12; Kennell Decl., Exs. DD & EE).  Around the same time, Great West offered to settle the matter for a nominal sum, but Ranasinghe refused, demanding $100,000 in cash to settle.  (Great West Mem. 13; Kennell Decl., Ex. GG ("Ranasinghe Email Exchange") at 1).  Ranasinghe threatened that, if Great West did not agree to his terms, he would bring a new lawsuit and name Great West's attorneys as well.  (*See* Ranasinghe Email Exchange 1).  On January 13, 2016, he filed

the present lawsuit in New York state court, making true on his threat to add Great West's counsel in *Ranasinghe I* — Patrick M. Kennell and his law firm at the time, Nelson Brown & Co. ("Nelson Brown"), as well as Kennell's current firm, Kaufman Dolowich & Voluck ("Kaufman Dolowich") — as Defendants. (Kennell Decl., Ex HH at 1). After Ranasinghe amended his complaint to add a claim under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961 *et seq.*, Defendants removed the action to this Court. (Kennell Decl., Ex. JJ; Docket No. 1 (notice of removal)). Thereafter, Ranasinghe amended his complaint again (dropping his RICO claim), and Defendants filed the present motions. (*See* Third Am. Compl.; Docket Nos. 53, 57, 64).[2]

## THE MOTIONS TO DISMISS

In light of *Ranasinghe I*, the present suit can and should be swiftly dismissed. It is well established that district courts have broad discretion to stay or dismiss duplicative litigation. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("As between federal district courts, . . . though no precise rule has evolved, the general principle is to avoid duplicative litigation."); *see also Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) ("As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit."); *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991) ("[W]here there are two competing lawsuits, the first suit should have priority, absent the

---

[2] Although Ranasinghe dropped his only federal claim, that did not deprive this Court of subject matter jurisdiction, as it is measured as of the time of removal. *See, e.g.*, *Hallingby v. Hallingby*, 574 F.3d 51, 56 (2d Cir. 2009) ("[T]he existence of federal subject matter jurisdiction over an action removed from state court to federal court is normally to be determined as of the time of removal."); *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 301 (2d Cir. 2004) ("[W]e view the critical issue to be whether the district court had subject matter jurisdiction at any time before it rendered judgment.").

showing of balance of convenience . . . or . . . special circumstances . . . giving priority to the second."). A comparison of Ranasinghe's briefs in the Ninth Circuit appeal and the Third Amended Complaint in this action make plain that Ranasinghe's claims here are fundamentally the same as the claims that he is still litigating in *Ranasinghe I*. (*See* Great West Mem. 24 (chart comparing issues alleged in *Ranasinghe I* and the instant action)). He may have repackaged them slightly and added new legal theories (for example, a violation of New York Judiciary Law Section 487), but the gravamen of the claims is identical: that Defendants submitted a false and fraudulent affidavit in the underlying contract action in the Arizona District Court. There is no reason to entertain those claims here when they are still pending before the Ninth Circuit. (*Compare* Kennell Decl., Exs. Y & AA, *with* Third Am. Compl. ¶¶ 73-75, 133-35, 137, 181, 215). On that basis alone, the case can be and is dismissed.

Separate and apart from being duplicative, however, Ranasinghe's claims are barred by the related doctrines of *res judicata* and collateral estoppel. "Under *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).[3] "Under collateral estoppel, once an issue is actually and necessarily determined by a court of

---

[3] Arguably, Arizona state law governs the application of *res judicata* and collateral estoppel here. *See, e.g.*, *Algonquin Power Income Fund v. Christine Falls of N.Y., Inc.,* 362 F. App'x 151, 154 (2d Cir. 2010) ("Because the decision claimed to have preclusive effect was rendered by a district court sitting in diversity, we apply the preclusion law that would be applied by state courts in the State in which the federal diversity court sits." (internal quotation marks and alteration omitted)). Defendants, however, rely exclusively on Second Circuit law. (Ranasinghe cites precedent from many jurisdictions — including but certainly not limited to Arizona.) Moreover, Arizona law does not appear to differ materially from Second Circuit law in this context. *See, e.g.*, *Pettit v. Pettit*, 189 P.3d 1102, 1104 (Ariz. Ct. App. 2008) (barring religiation of a (1) prior suit ending in a judgment on the merits, (2) based on the same cause of action, and (3) involving the same parties or their privies). Accordingly, the Court relies on Second Circuit authority for its analysis.

competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979). The former doctrine applies "where an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) involving the same cause of action; and (4) in a case involving the same parties or their privies." *Gertskis v. New York Dep't of Health and Mental Hygiene*, No. 13-CV-2024 (JMF), 2014 WL 2933149, at *4 (S.D.N.Y. June 27, 2014). For collateral estoppel to apply, "(1) the issues of both proceedings must be identical, (2) the relevant issues [must have been] *actually* litigated and decided in the prior proceeding, (3) there must have been 'full and fair opportunity' for the litigation of the issues in the prior proceeding, and (4) the issues [must have been necessary] to support a valid and final judgment on the merits." *Leather v. Eyck*, 180 F.3d 420, 425-26 (2d Cir. 1999). Finally, to the extent relevant here, the doctrine of non-mutual estoppel allows a defendant who was not party to the previous litigation to rely on *res judicata* or collateral estoppel to bar claims or issues raised in subsequent litigation, assuming the issue was fully and fairly litigated in the first instance. *See Austin v. Downs, Rachlin & Martin Burlington St. Johnsbury*, 270 F. App'x 52, 54 (2d Cir. 2008); *see also Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 329 (1971) ("Permitting repeated litigation of the same issues as long as the supply of unrelated defendants holds out reflects either the aura of the gaming table or a lack of discipline and of disinterestedness on the part of the lower courts." (internal quotation marks omitted)).

Both doctrines are applicable here. First, Ranasinghe had a full and fair opportunity to litigate the issues and claims that he presses here in *Ranasinghe I*. Indeed, Ranasinghe challenged the veracity of Popolizio affidavit on at least three separate occasions before the Arizona District Court: in his opposition to Great West's motion for summary judgment (Bauer

Aff. ¶ 20; Bauer Aff., Ex. J, at 7, 9-12); in his motion for reconsideration of the grant of summary judgment (Bauer Aff. ¶ 23; Bauer Aff., Ex. M at 3-6, 11-12); and in his motion to vacate the summary judgment order (Bauer Aff. ¶ 27; Bauer Aff., Ex. P at 10-15).  In each instance, the Arizona District Court rejected Ranasinghe's arguments and those rejections are final for purposes of *res judicata* and collateral estoppel notwithstanding the pending appeal.  *See, e.g.*, *Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 421 (S.D.N.Y. 2008) ("It is long settled in this Court . . . that a summary judgment dismissal is considered a decision on the merits for *res judicata* purposes."); *see also Weston Funding Corp. v. Lafayette Towers, Inc.*, 550 F.2d 710, 715 (2d Cir. 1977) (holding that a summary judgment dismissal in a prior action qualified as a decision on the merits in the *res judicata* context); *Yan Won Liao v. Holder*, 691 F. Supp. 2d 344, 352 n.9 (E.D.N.Y. 2010) (same).

Second, as noted above, the claims and issues raised here are, at bottom, identical to those that Ranasinghe alleged (or could have alleged) in *Ranasinghe I*.  (*See, e.g.*, Kennell Decl., Ex. M at 4; Great West Mem. 24 (chart)).  The fact that Ranasinghe has repackaged his claims slightly and presented them in the guise of new legal theories is immaterial, as *res judicata* precludes not only those claims that were raised in the prior action, but also those involving the same transaction or connected series of transactions that "could have been raised in that action," *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981); *accord Cromwell v. County of Sac*, 94 U.S. 351, 352 (1977), and collateral estoppel precludes relitigation of *issues* that were previously decided, *see Proctor v. LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013).  Finally, this case involves the same parties as *Ranasinghe I* or their privies.  *See Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 367-68 (2nd Cir. 1995) ("In its modern form, the principle of privity bars relitigation of the same cause of action against a new defendant

9

known by a plaintiff at the time of the first suit where the new defendant has a sufficiently close relationship to the original defendant to justify preclusion."). Indeed, the only new parties are Defendant Kennell and his current and former law firms (Kaufman Dolowich and Nelson Brown, respectively), and Ranasinghe explicitly identified Kennell in *Ranasinghe I* as the one who "should bear the responsibility for presenting a fabricated document." (Kennell Decl., Ex. P at ¶ 19). At a minimum, Kennell, Kaufman Dolowich, and Nelson Brown would be entitled to rely on non-mutual estoppel in this context. *See Austin*, 270 F. App'x at 54.

In short, notwithstanding the pending appeal in the Ninth Circuit, Ranasinghe's claims are precluded by both *res judicata* and collateral estoppel. In fact, "so similar are Plaintiff's claims here to those that he raised in [*Ranasinghe I*] that this lawsuit serves as a ringing endorsement of the wisdom and fairness of the" two preclusion doctrines. *Smith v. Seinfeld*, No. 13-CV-4211 (JMF), 2014 WL 700202, at *3 (S.D.N.Y. Feb. 24, 2014).[4]

---

[4] The Court need not, and does not, reach Defendants' other arguments for dismissal, but notes that there appears to be no more basis to exercise personal jurisdiction over Defendants Popolizio and Jones Skeleton in this case than there was in the E.D.N.Y. action. (*See* Kennell Decl., Ex. G at 4; Third Am. Compl. ¶ 43). The fact that they appeared through counsel in the E.D.N.Y. action does not subject them to suit here. *See, e.g.*, *Rockwood Nat'l Corp. v. Pea. Marwick, Mitchell & Co.*, 63 A.D.2d 978 (N.Y. App. Div. 1978). Additionally, several of Ranasinghe's claims plainly fail on the merits. For example, his claims under Section 487 of the New York Judiciary Law fail as that law does "not apply to acts by attorneys outside New York's territorial borders," *Schertenleib v. Traum*, 589 F.2d 1156, 1166 (2d Cir. 1978), and Ranasinghe alleges *no* viable non-Arizona conduct. (*See* Great West Mem. 27-28; Kennell Decl., Ex. FF at 3). And he may not bring suit for violation of New York's Disciplinary Rules or Arizona's Rules of Professional Conduct. *See, e.g.*, *Fagan v. U.S. Dist. Court for the S. Dist. of N.Y.*, 644 F. Supp. 2d 441, 450 (S.D.N.Y. 2009) (dismissing a claim under the New York Lawyer's Code of Professional Responsibility on the ground that an "alleged ethics violation[] [did] not form a valid cause of action before this Court" and should have been directed to "the appropriate disciplinary authorities"); *Stirling Bridge, L.L.C. v. Quarles & Brady, LLP*, No. 1 CA-CV 08-0244, 2009 WL 4753956, at *5 (Ariz. Ct. App. Dec. 10, 2009) ("[A]lleged violations of the Rules of Professional Conduct governing attorneys do not give rise to civil causes of action.").

## THE MOTIONS FOR SANCTIONS

Defendants Kennell, Great West, Kaufman Dolowich, and Nelson Brown also move for sanctions — most notably, a pre-filing injunction barring Ranasinghe from any further filings or claims arising out of the issues connected to *Ranasinghe I*. (Docket No. 66 ("Defs.' Mot. for Sanctions") at 4-8).[5] That the Court has authority to enjoin Ranasinghe "from further vexatious litigation is beyond peradventure." *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 23 (2d Cir. 1986). In determining whether to exercise that authority, the Court is required to consider the following factors:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Id.* at 24. "Ultimately," the Second Circuit has observed, "the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Id.*; *accord Iwachiw v. N.Y. State Dep't of Motor Vehicles*, 396 F.3d 525, 528 (2d Cir. 2005) (per curiam).

Here, all but the third factor weigh heavily in favor of a pre-filing injunction. First, Ranasinghe has a demonstrated history of making meritless and duplicative filings in connection with the events at issue here. Like the litigant in *Safir*, "he has repeatedly asserted the same claims in slightly altered guise" and most — if not all of — his "claims have been resoundingly rejected by the courts." 792 F.2d at 24. Second, there is good reason to doubt his motives in bringing the present lawsuit and to conclude that he brought it primarily to harass Defendants.

---

[5]   Ranasinghe filed no opposition to Defendants' sanctions motion. (Docket Nos. 64, 67).

After all, he is simultaneously seeking relief on the same grounds in the Ninth Circuit. And he filed this lawsuit with ample notice that personal jurisdiction was likely lacking as to many of the Defendants (*see, e.g.*, *Ranasinghe I* Dismissal Order at 4) and only after making what would appear to be an outlandish settlement demand from Great West. (Great West Mem. 13; Ranasinghe Email Exchange 1). Finally, to date, he has not paid the $234,498.70 in attorneys' fees awarded to Great West. It is "obvious," therefore, that "that mere dismissal of this action will not hinder [Ranasinghe] from initiating further similar proceedings" and "that other types of sanctions would be unavailing." *Safir*, 792 F.2d at 24. In short, the Court finds that Ranasinghe is "likely to continue to abuse the judicial process and harass other parties" absent a pre-filing injunction. *Id.* Indeed, if anything, the case for a pre-filing injunction is even greater here than it was in *Safir*, as all of Ranasinghe's claims (and especially those here) have lacked merit, while "some of Safir's lawsuits, far from being frivolous, were meritorious." *Id.*

Accordingly, Ranasinghe is barred from filing future actions relating to, or arising from, the death of Mr. Sapukotana and the litigation related thereto — against any party and in any court — without first obtaining leave to file from this Court. (To be clear, Ranasinghe may continue to pursue appellate relief in *Ranasinghe I* and may appeal from the judgment in this case.) Any motion for leave to file must be captioned "Application Pursuant to Court Order Seeking Leave to File." Ranasinghe must attach a copy of his proposed complaint and attach a copy of this Opinion and Order with any such motion. The motion must be filed with the *Pro Se* Office of this Court. Should Ranasinghe violate this Opinion and Order and file an action without first obtaining leave to file, the action will be dismissed for failure to comply with this Opinion and Order and Ranasinghe may be subject to sanctions, including contempt. Additionally, Ranasinghe is warned that submission of further frivolous documents may result in

the imposition of additional sanctions, including monetary penalties.  *See* 28 U.S.C. § 1651; *see also, e.g.*, *Gertskis*, 2014 WL 2933149, at *7.

Although it is tempting to go further and to require Ranasinghe to reimburse Defendants for the attorneys' fees they were forced to pay in connection with this lawsuit, the Court declines to do so.  For one thing, Defendants themselves make only a perfunctory request for attorney's fees, citing no authority in support of the request.  (*See* Defs.' Mot. for Sanctions 11 ("The most effective sanction available in this situation is a pre-filing injunction . . . .  [T]he Court should also consider other and additional sanctions, including an award of attorneys' fees in favor of these movants.")).  For another, Rule 11 of the Federal Rules of Civil Procedure — the basis for Defendants' sanctions motion (*id.* at 8-11) — explicitly states that sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).  Here, "the granting of the litigation injunction . . . will serve as both the greater remedy for defendants' harm, and the greater deterrence against [Ranasinghe's] abuse of the judicial process."  *Executor of N.Y. Estate of Kates v. Pressley & Pressley, P.A.*, No. 11-CV-3221 (JFB) (ARL), 2013 WL 495415, at *9 (E.D.N.Y. Feb. 7, 2013); *see also, e.g.*, *Lipin v. Hunt*, 573 F. Supp. 2d 836, 846 (S.D.N.Y. 2008) ("While the Court is sensitive to the cost that [the plaintiff] has imposed on defendants, the principal objective of the imposition of Rule 11 sanctions is not compensation of the victimized party but rather the deterrence of baseless filings and the curbing of abuses.  Because [the plaintiff's] abusive conduct will be completely deterred by injunctive relief, an additional award of attorneys' fees is not warranted." (internal quotation marks and citation omitted)).  Indeed, as Defendants themselves concede, Ranasinghe's failure to pay Great West's attorneys' fees to date mean that "monetary sanctions will have no real effect on him."  (Defs.' Mot. For Sanctions 6).

## CONCLUSION

For the reasons stated above, Defendants' motions to dismiss are GRANTED, and the Third Amended Complaint is DISMISSED in its entirety. Additionally, Defendants' motions for sanctions is GRANTED in part and DENIED in part. Specifically, as set forth above, Ranasinghe is barred from filing future actions relating to, or arising from, the death of Mr. Sapukotana and the litigation related thereto — against any party and in any court — without first obtaining leave to file from this Court. The Clerk of Court is directed to terminate Docket Nos. 53, 57, and 64, and to close this case.

SO ORDERED.

Dated: January 24, 2017
      New York, New York

_____
JESSE M. FURMAN
United States District Judge